**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**RHONDA WILLIAMS,**

              **Plaintiff,**

**-v-**

**USABLE LIFE**

              **Defendant.**

**Case No. 3:12-cv-400**

**Judge Thomas M. Rose**

_____

**ENTRY AND ORDER OVERRULING WILLIAMS' MOTION FOR ERISA DISCOVERY (Doc. #10)**

_____

Now before the Court is a Motion for ERISA Discovery brought by Plaintiff Rhonda Williams ("Williams"). (Doc. #10.) Therein, Williams argues that the Court should allow certain discovery. Specifically, Williams seeks to depose individuals employed by Defendant USAble Life ("USAble") who handled her claim. She also seeks to depose the individual at USAble most responsible for initiating, continuing and maintaining contractual relationships with vendors like Elite Physicians, LTD ("Elite Physicians") and BMI, Inc. ("BMI"). She also seeks discovery from vendors Elite Physicians and BMI. Finally, she seeks discovery of specific information from USAble regarding compensation agreements between plan administrators and third-party reviewers, contractual connections, annual financial payments and statistical data about the number of claims sent to the same reviewer and the number of denials resulting therefrom, statistical data on the number of times that such reviewers found disability claimants able to work at a sedentary occupation or found that claimant not be disabled from any occupation, and whether USAble has any incentive, bonus or reward programs or financial payments that are paid annually to reviewers or vendors for meeting goals or service demands, and any

documentation that USAble has regarding the administrative process designed to check the accuracy of grants of claims.

USAble has responded arguing that Williams' request for discovery should be denied. (Doc. #11.) USAble also asserts that it has added a draft report by Dr. Petrie to the Administrative Record as requested by Williams.

The proposed discovery request attached to Williams' Motion is 18 interrogatories and requests for production. Three of them are "boiler plate" that could reasonably be expected to be included with any group of interrogatories. The remainder are the same or request more detail on the same topic as the requests included in Williams' Motion.

According to the proposed administrative record, USAble declined to pay Williams on January 26, 2012. The denial letter indicates that it was based, at least in part, upon a peer review report prepared by Dr. Petri, who was employed by Elite Physicians. USAble also declined to pay Williams on appeal. This denial was based, at least in part, on reviews by Doctors Klingbeil and Lumpkins who were employed by BMI.

Williams' Motion is now fully briefed and ripe for decision. The relevant legal provisions will first be set forth followed by an analysis of the Motion.

**RELEVANT LEGAL PROVISIONS**

District court review of an ERISA claim for denial of benefits is confined to the administrative record with a limited exception. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619(6th Cir. 1998). In *Wilkins*, the Sixth Circuit determined that evidence outside the record could be considered only if that evidence is offered in support of a procedural challenge to the administrator's decision. *Id.* A procedural challenge includes an alleged lack of due

process afforded by the administrator or alleged bias by the administrator. *Id.* Finally, the Sixth

Circuit determined that any prehearing discovery is limited to such procedural challenges. *Id.*

Following *Wilkins*, district courts in the Sixth Circuit differed somewhat in determining

what appropriately triggered the limited exception to the general rule regarding discovery in

ERISA cases. *Thornton v. The Western and Southern Life Insurance Company Flexible Benefits*

*Plan*, No. 3:08CV-00648-M, 2010 WL 411119 at *2 (W.D. Ky. Jan. 28, 2010.) However, all of

these courts required the plaintiff to do more than allege procedural challenges. *Id.* Finally, these

courts limited any discovery to the procedural challenges. *Id.*

Then, in 2008, the Supreme Court issued the *Glenn* decision. *Metropolitan Life*

*Insurance Co. v. Glenn*, 544 U.S. 105 (2008). Prior to *Glenn*, an ERISA plaintiff needed to make

a threshold showing of bias or a procedural violation before addition discovery was permitted.

*Thornton*, 2020 WL 411119 at *2.

In *Glenn*, the Supreme Court decided that a per se conflict of interest exists when an

entity that administers an ERISA plan "both determines whether an employee is eligible for

benefits and pays those benefits out of its own pockets." *Glenn*, 544 U.S. at 108. The Supreme

Court says that a conflict of interest should be weighed as a factor in determining whether there

has been an abuse of discretion,[1] but does not identify any special evidentiary rules for

evaluating this conflict. *Id.* at 115-16.

The *Glenn* Court says that the evaluation of an ERISA claim will often take into account

several different factors, of which a conflict of interest may be one. *Id.* at 117. When several

---

[1]This Court is not determining here whether USAble's decision is reviewed under a de
novo standard or an abuse-of-discretion standard.

factors are involved, "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.* A conflict of interest "should prove more important… where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." The conflict of interest is "less important… where the administrator has taken active steps to reduce potential bias and to promote accuracy…." *Id.*

While *Glenn* did not explicitly answer the question of whether discovery outside the administrative record should be permitted as a matter of course when there is a per se conflict of interest, it arguably did so implicitly. *See Thornton*, 2010 WL 411119 at *2. Thus, since *Glenn*, some district courts in the Sixth Circuit have found that discovery beyond the administrative record may be warranted to assist the court in determining whether a per se conflict of interest gives rise to an actual abuse of discretion. *Id.*

Also since *Glenn* issued, the Sixth Circuit has determined that *Glenn's* holding does not mean that discovery is automatically available where a defendant is both the administrator and the payor under an ERISA plan. *Johnson v. Connecticut General Life Insurance Co.*, 324 F. App'x 459, 467 (6th Cir. 2009). District courts, according to the Sixth Circuit, may evaluate and determine whether and to what extent limited discovery is appropriate. *Id.*

Post-*Glenn* discovery has generally been limited to a search for evidence of whether an inherent conflict of interest affected a benefits decision. *Id.* at *3. Appropriate areas of inquiry have been:

> 1. Incentive, bonus or reward programs or systems, formal or informal, for any employee(s) involved in any meaningful way in reviewing disability claims.

2. Contractual connections between plan administrator/payor and the reviewers used in plaintiff's claim and financial payments paid annually to the reviewers from the administrator/payor.

3. Statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted.

4. The number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled.

5. Documentation of administrative processes designed only to check the accuracy of grants of claims - limited to claims guidelines actually consulted to adjudicate plaintiff's claim.

*Busch v. Hartford Life and Accident Insurance Co.*, No. 5:10-00111-KKC, 2010 WL 3842367 at *4 (E.D. Ky. Sep. 27, 2010).

When discovery is permitted, its scope is narrow. *Id.* To that end, discovery into areas falling under the general category of "reviewer credibility" is typically not permitted. *Id.* These areas falling under the category of "reviewer credibility" include information such as personnel files, performance reviews and employee pay records. *Id.*

### ANALYSIS

In this case, there is evidence that USAble is the plan administrator. Further, Williams argues that, "it is clear that USAble is an insurance company…." However, there is no evidence that USAble is the payor of long-term disability benefits to Williams. Thus, the law does not permit the Court to proceed as if USAble has an inherent conflict of interest.

Williams has pled that USAble's second denial of benefits, dated October 11, 2012, made no mention of the new surgical procedure that she was to undergo in September of 2012 or that she was showing a less-than-normal FEV on a test that was performed in May of 2011. (Compl. ¶ 13.)  Williams has also pled that no mention of this new surgical procedure or the FEV results

was made by either peer-reviewing physician. (Id. at ¶ 15.) USAble, according to Williams'

Complaint, received this additional information on September 26, 2012, five (5) days after the

peer review reports were dated. (Id. at n.2, p. 4.) USAble responds that it issued a letter dated

October 11, 2012 and the records referenced by Williams speak for themselves. (Answer ¶¶ 13,

15.)

From this, the Court is unable to determine that Williams has a due process claim that

merits additional discovery. There is no evidence, only an unverified complaint, that Williams

submitted the additional information. Further, there is no evidence as to whether the additional

information was relevant. The Court does not know whether Williams actually had the surgical

procedure or what the procedure entailed. Further, there is no evidence as to whether USAble

considered the FEV results.

Since Williams has not shown a possible due process violation that merits additional

discovery, and since there is not evidence of an inherent conflict of interest, discovery is not

warranted. However, if USAble was the insurer of the Plan under which Williams is claiming

benefits, USAble had an inherent conflict which may merit further discovery. Thus, in the

interest of a timely proceeding, Williams' request for discovery will be considered based upon

USAble having an inherent conflict of interest without the Court actually finding, at this time,

that USAble had an inherent conflict of interest.

Williams offers several arguments as to why the Court needs additional discovery to

properly evaluate an inherent conflict of interest. Each will be addressed seriatim.

Williams' first argument is that the invoices in the proposed administrative record do not

describe the length of time that the case was reviewed by Dr. Petrie or how much Dr. Petrie was

paid for his individual services. She also argues that it cannot be determined whether Dr. Petrie reviewed a report that was written by an Elite Physician's employee or whether he reviewed records electronically or whether he actually received her medical records and created a report himself.

This first argument is unavailing. Presumably Dr. Petrie's report will be in the Administrative Record.[2] The details of how Dr. Petrie, or any other doctor, including Williams' doctors, went about preparing his report are not relevant to the task at hand. Dr. Petrie's report will be considered along with the other doctor's reports in the Administrative Record, including any provided by Williams, as one factor along with an inherent conflict of interest, if there is one.

Williams next argues that the invoice for services rendered to BMI does not disclose how the reports were generated or how much time each individual physician spent reviewing documents, how the physical review actually occurred and how much each physician was actually paid. USAble's referral to BMI generated three different peer review responses. The proposed administrative record indicates how much BMI was paid for these three responses. The details of how the three peer reviews occurred and how much each reviewer was actually paid are irrelevant to the task at hand. The peer review reports will be considered along with other doctors reports in the Administrative Record as factors along with an inherent conflict of interest, if there is one.

Williams next argues that the administrative record proposed by USAble deprives her of

---

[2]USAble has indicated that a draft of Dr. Petrie's report will now also be included in the Administrative Record

due process because it does not contain any of the re-writes or non-final versions of the peer review reports. This argument, too, is unavailing. The Court assumes that many individuals, including doctors and lawyers, prepare reports that are in draft form at some point in time. However, it is the final, issued report that represents the opinion that is to be relied upon. The Court fails to see how the manner in which the reports in this case are prepared deprives Williams of any due process.

Williams next argues that, despite receiving type-written notes from different physicians limiting her to a lower than sedentary capacity, Dr. Petrie opined that she has no condition that would functionally impair her ability to do daily living or work full time on a sedentary basis. This, of course, is an argument that Williams can make in her appeal and not a reason for additional discovery beyond what she apparently has already discovered.

Williams next argues that additional discovery is needed because none of the cases her counsel could find revealed any report or opinion provided by Dr. Petrie that was consistent with disability. This argument for additional discovery misses the mark as well. The Court fails to see how this argument is relevant to the evaluation of a possible inherent conflict of interest in this case, particularly since any case that reaches the court system is most probably going to involve a disagreement as to disability. Situations where a reviewing physician, like Dr. Petrie, finds a disability are most probably not going to be found in the court system.

Williams' next argument is that is seems "incredible" that there is no communication in the proposed administrative record concerning BMI and USAble subsequent to USAble's referral of the matter to BMI for review and before final reports are transmitted. Again, the Court fails to see how this is "incredible" let alone relevant to an evaluation of a possible inherent

-8-

conflict of interest. In fact, communications between BMI and USAble after the matter was referred and before final reports issue would lead the Court to question credibility. While Williams' counsel may wish to find such communications, there apparently are none.

Williams next argument is that the proposed administrative record does not offer explanations as to how each reviewing physician failed to cite to Dr. Black's "Statement Under Oath" which offers a thorough explanation of disability. While this may be an argument for Williams' appeal, it is not an argument for additional discovery.

Williams next questions the probability that two different physicians in two different states create two different reports that are submitted to the vendor on the same day. This, of course, is not good reason for additional discovery. Further, apparently the day the reports were submitted is the day they were due, at least that is the Court's experience with most, if not all, deadline submissions.

Williams finally argues that a case search of Dr. Lumpkins' name finds that she uniformly finds against a conclusion of disability. This argument for additional discovery misses the mark as well. The Court fails to see how this argument is relevant to the evaluation of a possible inherent conflict of interest in this case, particularly since any case that reaches the court system is most probably going to involve a disagreement as to disability. Situations where a reviewing physician, like Dr. Lumpkins, finds a disability are most probably not going to be found in the court system.

Williams concludes that, "[b]ecause USAble has a significant conflict of interest in this case, these relationships must be explored" and "all of these items go to the very heart of due process." However, the Court disagrees. Assuming that it is shown that USAble has an inherent

conflict of interest, that conflict of interest will be considered, in accordance with the law, as one of the factors in the evaluation of USAble's decisions. Further, although Williams has raised several possible due process issues, none of them go beyond mere speculation.

**CONCLUSION**

Williams argues that there is legal support for allowing her requests for discovery. However, the cited legal support cited by Williams does not provide for discovery in this case. Williams' Motion for ERISA Discovery (doc. #10) is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio this Eighth Day of July, 2013

**s/Thomas M. Rose**
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record